KIMBALL (LIGHTNER v.). See Case No. 8,345.

## Case No. 7,774.

### KIMBALL et al. v. MOBILE.

[3 Woods, 555.] [1]

Circuit Court, S. D. Alabama. June Term, 1877.[2]

PUBLIC IMPROVEMENTS—COUNTY BONDS—RES JUDICATA—PRACTICE IN EQUITY—REMEDY AT LAW—WANT OF EQUITY.

1. The legislature of a state has authority, by legislative act, to compel a county, against its will, to levy and collect a tax for the improvement of a river or harbor within the county limits, and in which the county is vitally interested, although other counties and the state at large may also derive benefit from the improvement.

2. When a bill is dismissed, without prejudice, the complainant is not barred from bringing a new bill against other parties on the same claim, or against the same parties, on new or additional facts.

3. The legislature of Alabama passed an act creating a harbor board, with authority to contract for the improvement of Mobile Harbor, and requiring the authorities of the county of Mobile to issue to said harbor board the bonds of the county, to an amount not exceeding one million of dollars, to pay for said improvement. The harbor board made a contract for work on the harbor, to be paid for in county bonds. The work was performed by the contractors, and on settlement there was found due to them six county bonds of one thousand dollars each. The act creating the harbor board was repealed, and the board could not demand or receive from the county authorities the bonds to pay this obligation. Held, that the bill in equity of the contractors, against the county, to compel the delivery directly to them of the bonds, was well brought, and that a court of equity had jurisdiction of the case.

4. The rights of the contractors could not be impaired by the repeal of the law creating the harbor board, or any other legislation enacted after the date of their contract.

In equity. [Bill by Seth N. Kimball and Slaughter against the county of Mobile.] Heard on pleadings and evidence for final decree. On February 21, 1860, an act was passed by the Alabama legislature, entitled "An act for the improvement of the bay and harbor of Mobile." The first section of the act provided that the collector of customs for the port of Mobile, and the president of the board of revenue for the county of Mobile, and their successors in office, were thereby appointed ex officio a board for the purpose of causing the bay and harbor of Mobile to be deepened and improved, which board should be styled the "Board of Harbor Commissioners," etc. The fourth section of the act provided that the said board, in the performance of its powers and duties under the act, should be a body corporate, and the president of the commissioners of revenue of said county of Mobile, was thereby authorized and required, from time to time, and as the same might be called for by

said board of harbor commissioners, to issue the bonds of the county of Mobile, with the coupons attached for annual interest, payable semi-annually to bearer, etc., and the same should be handed over to said board of harbor commissioners, to be sold, and the proceeds to be applied to said work, as its necessities might require, and as authorized by the act, provided the whole amount should not exceed eight hundred thousand dollars. The war prevented any steps, under this act, for the improvement of the bay and harbor of Mobile. After the war, to wit, on February 16, 1867, an act was passed and approved, entitled "An act to provide for the improvement of the river, bay and harbor of Mobile." This act declared that the president of the court of county commissioners of revenue of Mobile county, the mayor of Mobile, the president of the Bank of Mobile, the president of the Mobile chamber of commerce, and one citizen of the county of Mobile, to be appointed by the governor of the state, and their successors in office, were thereby constituted a board for the improvement of the river, harbor and bay of Mobile. Section two declared that the president and commissioners of revenue of Mobile county were thereby required to issue bonds to the amount of one million of dollars, to be issued and made payable as they might deem proper, to be delivered to said board for the improvement of the river, harbor and bay of Mobile, whenever they might require them; and said court were required to levy and cause to be collected such tax as might be deemed proper to pay such bonds. The third section declared that, "said harbor board are hereby authorized to receive such bonds and apply them, or the proceeds of them, to the improvement, etc., of the river, harbor and bay of Mobile, or any part thereof," etc. By section four it was provided that said harbor board should be vested with the like powers as were conferred by the said act, approved February 21, 1860, etc., and subjected to, and held liable to the duties, penalties and punishments provided for in the fifteenth section of said act. Under the provisions of this act the harbor board was organized, and on June 24, 1872, entered into a contract with the complainants for the dredging, by the latter, of a channel through Dog river bar, in the bay of Mobile. They were to commence the work by the first day of August, 1872, and complete it on or before June 1, 1873. The harbor board agreed, by said contract, to pay complainants forty-nine cents per cubic yard of material excavated and removed, and to make payments as the work progressed. The complainants agreed to receive their compensation for said work in bonds of the county of Mobile, issued under said act of February 16, 1867, at the rate of eighty-two and one-half cents on the dollar.

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

[2] [Affirmed in 102 U. S. 691.]

The complainants completed their work, under said contract, on March 15, 1873, and it was approved and accepted on the 16th, by the engineer of said harbor board. At that date there were due them seventeen bonds of $1,000 each on their said contract. On June 5, 1873, a committee, appointed by the harbor board, approved the act of the engineer of the board in accepting the work of complainants. Prior to June 1, 1873, the court of county commissioners of Mobile county had issued to the harbor board two hundred bonds of $1,000 each. On June 5, 1873, it was admitted by the president of the harbor board that the complainants were then entitled to seventeen bonds of $1,000, and he delivered a written statement acknowledging that fact. On July 29, 1873, the harbor board delivered to complainants eleven bonds, leaving due them six bonds of $1,000 each. The complainants claim and aver that, after the delivery to them of said eleven bonds, the harbor board had no other bonds and no money or other means to pay complainants, and had applied all the two hundred bonds delivered to them to the purposes for which they were issued. On April 19, 1873, an act of the legislature was approved which limited the issue to the harbor board of county bonds to the sum of $200,000, and required said harbor board to file a statement of its receipts and expenditures with the judge of probate for Mobile county, and on the same day the act creating the harbor board was repealed. On November 25, 1873, the complainants presented to the court of county commissioners for Mobile county their claim for six bonds of $1,000 each, or their value in money at 82½ cents on the dollar. The claim was rejected. On February 23, 1876, the following act of the legislature of Alabama was approved and took effect:

"An act to close the accounts and settle the contracts made by the board for the improvement of the river, harbor and bay of Mobile:

"Section 1. Be it enacted by the general assembly of Alabama, that it shall be and is hereby made the duty of the president and commissioners of revenue of Mobile county to inquire into the validity and propriety of all claims which may be presented to them for work and labor done and materials furnished, or services rendered, on any contract or agreement with the said board, made or executed between the fifteenth day of June and the first day of July, in the year eighteen hundred and seventy-two, for the improvement of the river, harbor and bay of Mobile, under the act approved February sixteenth, eighteen hundred and sixty-seven, entitled an act to provide for the improvement of the river, bay and harbor of Mobile: provided such claim be presented to said president and commissioners within six months after the passage of this act; and upon the same being satisfactorily proved

and shown to be still due and unpaid, it shall be the duty of said president and commissioners to provide for the payment thereof as of other claims against the county."

Under said act the complainants, on April 3, 1876, presented to said court of county commissioners for Mobile county their claim for six bonds or their value at 82½ cents on the dollar. The said board rejected the claim. The prayer of the bill was that the county of Mobile be required to deliver to the complainants six bonds of said county, of $1,000 each, or pay their value at 82½ cents on the dollar, with interest from the completion and acceptance of said work.

Wm. Boyles and Thomas H. Herndon, for complainants.

Wm. G. Jones, Lyman Gibbons, and Thomas H. Price, for defendant.

WOODS, Circuit Judge. The defendant asserts that the act of February 16, 1867, by authority of which the harbor board was organized, and contracted with complainants, was in violation of the constitution of the state then in force. This question has been settled in favor of the constitutionality of the law by the supreme court of Alabama, in the case of President, etc., Mobile Co. v. State, 45 Ala. 399. As this is a decision of the highest court of the state upon the construction of the law and the state constitution, it is binding upon this court. But defendant insists that, independent of any prohibition in the state constitution, the act was beyond legislative power. The argument is that the improvement of the bay and harbor of Mobile is a matter which interests not only Mobile county, but also many other counties of the state, and also the people of other states and even of foreign countries; that the improvement of harbors is a matter of national concern, and it is the duty of the general government to provide for it; that while the power of the legislature to authorize the county. if it so elected, to issue bonds for the improvement of the bay and harbor is not denied, yet the power of the legislature to compel the county nolens volens to issue its bonds for such a purpose is disputed. It is insisted that this act of the legislature was not only unjust and oppressive, but that it did not provide for taxation in any proper constitutional sense. It was taking the money of one corporation and giving it to another. It was merely confiscation and robbery under the false name of taxation; that such an act could not be supported under the taxing power, and was beyond the power of the legislature.

In support of this view, counsel have cited Cooley, Const. Lim. p. 214, and note 2; Id. p. 230, note 1; Id. pp. 235, 487, 488, 490, 491, 493; Cooley, Tax'n, 482, 483, 487, 495; Hil. Tax'n, pp. 12, 14, §§ 17, 18. So far as the act under consideration is charged to be unjust or oppressive, that is a matter with which this

court had nothing to do. It cannot amend or modify legislative acts or annul them because they seem to be harsh or unjust. License Tax Cases. 5 Wall. [72 U. S.] 462. On the question of the power of the legislature to pass the act under discussion, it may be conceded that the legislature has no power against the will of a municipal corporation to compel it to contract debts for local purposes in which the state has no concern, or to assume obligations not within the ordinary functions of municipal government. This seems to be the extent to which the authorities cited by defendants go. But the work for which the county of Mobile was required to issue bonds was one in which the state, and especially the county of Mobile, were interested, and it was clearly within the scope of the purposes for which the county was organized. "Counties, cities and towns exist only for the convenient administration of the government. Such organizations are instruments of the state to carry out its will. When they are authorized or directed to levy a tax to appropriate its proceeds, the state, through them, is doing indirectly what it might do directly. It is true the burden of the duty may thus rest upon a single political division, but the legislature has undoubted power to apportion a public burden among all the tax-payers of the state, or among those of a particular section. In its judgment those of a single section may reap the principal benefit from a proposed expenditure, as from the construction of a road, a bridge, an alms-house, or a hospital. It is not unjust. therefore, that they alone should bear it." Railroad Co. v. County of Otoe, 16 Wall. [83 U. S.] 667. So in U. S. v. Railroad Co., 17 Wall. [84 U. S.] 322, the supreme court says: "This power (to issue bonds to raise money in aid of a railroad) was conferred on the city of Baltimore, because its exercise concerned the public and to benefit the public. This power could no doubt have been imposed upon the city as a duty, and its exercise directed without the assent, or against the wish, of the corporation or its citizens. The state could do it directly on behalf of the city and without its intervention. The state is itself supreme, and needs no assent or authority from the city. It is not perceived that the act is less public and municipal in its character than if the state had compelled the city to levy the tax and to make the appropriation of the proceeds to the railroad company." These authorities, it seems to me, effectually dispose of the objection that it was not within the legislative power to compel the county of Mobile to issue its bonds for the improvement of a river and harbor within her own limits and in which she was deeply and vitally interested. See, also, 46 N. Y. 401; 47 N. Y. 608; 57 N. Y. 188; Blanding v. Burr, 13 Cal. 343; Town of Guilford v. Supervisors Chenango Co., 3 Kern. [13 N. Y.] 143; Stewart v. Supervisors of Polk Co., 30 Iowa, 9; Augusta Bank v. Augusta, 49 Me.

507. We may, therefore, assume it as settled that the act of February 16, 1867, is not obnoxious to any provision of the constitution of Alabama in force when it was passed, and is within the general scope of legislative power; in other words, that it is a valid and binding enactment. Under authority of this valid law the harbor board entered into a contract with the complainants for certain work, the work was performed according to the contract, it is conceded that the balance claimed by the complainants is due them, and it follows from these facts that there should be a decree in favor of complainants for such balance unless some obstacle is presented by other facts in the case which preclude such a decree.

It is alleged, by way of defense to the bill of complaint that a bill between the same parties as are complainants and defendants in this suit, setting up the same identical cause of action, was dismissed on appeal by the supreme court of Alabama, and that the questions raised by the present bill are res judicata and cannot be again litigated. This defense cannot hold: (1) Because it is not set up in the answer; and (2) there is no proof to sustain it. On the contrary, it appears that the case here made is different in essential particulars from that made in the case dismissed by the state court, and that the state court dismissed the bill of complainants without prejudice. They were, therefore, at liberty to bring a new bill against different parties on the same claim, or against the same parties on new or additional facts. It is alleged, and appears to be true, that the present bill does contain material averments. for want of which the bill in the state court was dismissed. For these reasons the defense of res adjudicata cannot prevail.

It is further set up, by way of defense, that there is an adequate remedy at law, and that this court is, therefore, without jurisdiction. If this objection can be maintained, it would be the duty of this court to dismiss the bill. It is, therefore, necessary to consider the question whether the complainants have a remedy at law against the county of Mobile. In the case of Mobile Co. v. Kimball, 54 Ala. 56, the law of February 16, 1867, under which the harbor board was organized, was construed. This court is bound to follow that construction, as much as if it were a part of the law itself. Mitchell v. Lippincott [Case No. 9,665]. and cases there cited. In that case the supreme court of Alabama held: "The harbor board was a body created by the general assembly, and not an agent appointed by the county of Mobile. Its authority, as well as its existence, was derived through the state from the state. It was with this board that complainants made their contract, upon which their suit was founded, and it is not shown or alleged that the amount of bonds it had received was insufficient to enable it to fulfill its engagements. Manifestly, therefore, their controversy should have been with

the harbor board, and not with the county of Mobile." "The only obligations imposed on the county, and incurred by it, were that it should issue its bonds upon demand of the harbor board, and pay them according to their stipulations to the lawful holders thereof. If the court of county commissioners refused, on such lawful demand, to issue bonds, or if the harbor board, after procuring the work to be done, failed to perform, or was disabled from performing its duty of demanding from the county its bonds to a sufficient amount to pay the contractors, it is probable a case would be made for the interference of a court, and its coercive operation on the county authorities in favor of the contractors in a suit brought by them."

This construction of the law by the supreme court shows that the complainants had no contract with the county of Mobile, for it is decided that the harbor board was not the agent of the county, but of the state. No suit at law upon the contract would lie against the county. The obligation of the county was to issue its bonds on the demand of the harbor board. This obligation was imposed, not by any contract between the county and the complainants, but by the law. If an action at law had been brought against the county on the contract made by the complainants with the harbor board, the county could have answered that it never made such a contract, and the complainants would have been put out of court.

The case is clearly one of equitable cognizance. It is to compel the county to issue and deliver to the complainants its bonds, in conformity, not with any contract, but of an obligation imposed by a law of the state. The contract of complainants was with the harbor board. The compensation was to be made in bonds of the county, to be issued on demand of the harbor board. There is due to complainants six bonds of the county of $1,000 each, for work performed under this contract. The harbor board has been destroyed by an act of the legislature. It cannot, or does not, demand the bonds from the county necessary to pay the complainants' claim. A court of equity can alone take the place of the harbor board, and require of the county to issue and deliver to complainants its bonds in payment of their claims. It is entirely clear that an action at law against the county would be futile. Judge Story, in his work on Equity Jurisprudence (volume 3, § 1250), says: "Another class of implied trusts, which may be mentioned under this head, is that which arises under contract, or otherwise, by operation of law from a claim which may be directly enforced by law against the party, but to the due discharge of which another party is ultimately liable. In such a case, a court of equity treats it as a trust by the party ultimately liable, which may be directly enforced in favor of the party ultimately entitled to the benefit of it. In other words, a court of equity will render

the party immediately liable who is or may be at law or in equity ultimately liable. Thus, if a trust is created for the benefit of a party who is to be the ultimate receiver of the money, or other thing, which constitutes the subject matter of the trust, he may sustain a suit in equity to have the money or other thing directly paid or delivered to himself." The text is sustained by the following citations: Forster v. Forster, 3 Brown, Ch. 489, 493; Tew v. Earl of Winterton, 1 Ves. Jr. 451; Sugd. Vend. (7th Ed.) c. 15, pp. 633, 634, § 4; 1 Madd. Ch. Prac. 471, 472.

It seems to me that the present case is an excellent illustration of the principle laid down by Judge Story. The jurisdiction of a court of equity, under the circumstances of this case, appears to me to be undoubted. But it is said that the statute law of Alabama affords a method of relief to the complainants by the prosecution of the claim against the county, etc. But if the case is one of equitable cognizance, no statute of Alabama can deprive the equity courts of the United States of their jurisdiction over it. Of course, the complainants would be required, if the statute law of the state so prescribed, to present their claim to the board of county commissioners, and to bring their suit within the time limited by the state law, but having presented their claim, and thus laid the foundation of their suit, if the case was one proper for a court of equity, they had the right, being citizens of a state other than the state of which the defendant was a citizen, to resort to the equity courts of the United States. No law of Alabama, providing another forum or another method of procedure, could deprive the complainants of their rights under the constitution and laws of the United States, or circumscribe the jurisdiction of the equity courts of the United States. Bennett v. Butterworth, 11 How. [52 U. S.] 669; Thompson v. Railroad Co., 6 Wall. [73 U. S.] 134; Case of Broderick's Will, 21 Wall. [88 U. S.] 503; Noyes v. Willard [Case No. 10,374]; Benjamin v. Cavaroc [Id. 1,300].

The act of February 23, 1860, which is quoted in full above, was an unnecessary enactment. It did not enlarge the rights of complainants, nor add aught to the jurisdiction of this court as a court of equity. The case of complainants is just as good without as with it, and the power of this court to grant relief is not changed by it.

The only question which remains is, whether the complainants have sustained, by proof, the averments of their bill, that after the passage of the act of April 19, 1873, which repealed the act of February 16, 1867, under which the harbor board was organized, said board had no money with which to pay complainants, and no bonds of the county of Mobile, except such as had been hypothecated, and that on and after July 29, 1873, said harbor board had no money or bonds with which to pay complainants' claim, or any part thereof,

and has none now. If this is established, the case is made which it is intimated by the supreme court of the state would compel the county to issue bonds to pay the debt due complainants. There is no averment in the answer of Mobile county, nor any hint in the evidence of any corrupt or fraudulent conduct in the administration of the county's means by the harbor board. It is not asserted that the bonds or funds of the county were misapplied or fraudulently appropriated. On the question, what means had the harbor board for the payment of its liabilities after it stopped work? Mr. Percy Walker, its secretary, says: "The board had, I believe, no money at its command when it stopped work, and was indebted to officers for salaries, nor did it have any bonds in its possession or under its control, after April 19, 1873, unless it was as follows: In July, 1873, Mr. Walsh returned from New York forty-two of the bonds, of which the county redeemed thirty-one, and Mr. Price, president of the harbor board, delivered the remainder (eleven) to Kimball & Slaughter, or their agent, on account of their work. The money paid to the county for the thirty-one bonds, was, with the exception of a small sum ($400), applied to the payment of the balance due to the Ninth National Bank of New York." The pleadings and evidence make it clear, that when the harbor board ceased operations, they owed to the complainants six bonds, of one thousand dollars each, of the county of Mobile, for work done under contract, made while the act of February 16, 1867, was in undisputed force, and that the harbor board had then no means to pay this obligation, and has none now. The claim of the complainants to call upon the county of Mobile to issue and deliver bonds, sufficient to satisfy said obligation, seems to be complete. It is hardly necessary to observe that no legislation passed after the contract between the complainants and the harbor board had been made and had been performed by complainants and the performance accepted, and the rights of complainants had been thus fixed, can have any effect to impair or abridge the rights of complainants. The two acts of April 19, 1873, cannot, therefore, have the slightest influence on complainant's rights. Their rights remain just as if those acts had never been passed. It results from these views, that there must be a decree for complainants, against the county of Mobile, for the delivery to complainants of six bonds of $1,000 each, or for their money value, at eighty-two and one-half cents in a dollar, with interest from March 15, 1873.

[NOTE. Upon the last point considered by the court, i. e. the supposed want of equity in the bill, Mr. Justice Field, speaking for the supreme court in affirming this case, said: "It appears to have been taken for granted by counsel, and also by the court below, that the supreme court of the state had decided that the harbor board was not the agent of the county in making the contract with the complainants. We do not so read its opinion. It only says that the board was created by the general assembly of the state, and was not an agent appointed by the county of Mobile. It does not state that the board was not an agent of the county, but only that its appointment was not from the county. It is not necessary to constitute an agency of a political subdivision of a state that its officials should be elected by its people or be appointed with their consent. It is enough to give them that character, that, however appointed, they are authorized by law to act for the county, district or other political subdivision." Taking this view of the law, the learned justice continued: "If, for any cause, the repeal of the law creating the harbor board, or the refusal of its members or other officials to act, the contract cannot be specifically enforced, a court of equity will order compensation in damages from the party ultimately liable." The learned justice is clearly of opinion that the legislative act of February 6, 1867, is constitutional. The issue of bonds was not a taking of private property for public use within the meaning of the constitutional clause. "It was a loan of the credit of the county for a work public in its character, designed to be of general benefit to the state." Upon the question of res judicata the second point considered by the court above, "the two suits, though seeking the same relief, rest upon a different state of facts, and the adjudication in the one constitutes, therefore, no bar to the recovery in the other." The learned justice considered at length the point not considered in the court below, whether the law of the state, in authorizing the improvement of the harbor of Mobile, trenches upon the commercial power of congress to regulate commerce with foreign nations and between the states. It was considered that it does not. 102 U. S. 691.]